Good morning, Your Honors. I am Assistant State's Attorney Harina Meghani-Wakely, representing the people of the state of Illinois, and I apologize for not being here when the case was called. We were waiting for the victim's family outside. I apologize. Good morning, Your Honors. My name is Adrienne Sloan with the Office of the State Appellate Defender, and I'm here on behalf of Bobby Wilson. Okay. Now, you're going to reserve some time for rebuttal? Just a few minutes, please, yes. Okay. Well, let's proceed. Okay. Good morning again, Your Honors. May it please the Court, my name again is Adrienne Sloan, and I'm here for Bobby Wilson. I'd like to focus today on Issues 1 and 3 in my brief, which is the sufficiency issue in the jury question. I'd like to briefly get into Issue 2, which is Miranda, if I do have time, and, of course, I'll answer questions on any of my five issues. Bobby Wilson, a 16-year-old high school student with documented special education needs, was convicted of first-degree murder and is serving 37 years. Even though the trial evidence only showed that Bobby was in the car with Kenton Morgan, hoping to get a ride to his aunt's house, when someone named A.J. got into the car, attempted to rob Morgan, and shot him. Let me ask you this, you know, after this was over, he left, didn't he leave with the shooter? So, Bobby did leave after this was over, but witness at Russell Buckner testified that Bobby did not actually flee in the same direction as the shooter, and that Bobby had fled northeast while the shooter fled southeast. Wasn't there inconsistencies in that statement? There were inconsistencies. So, in Russell Buckner's ERI, he did state that they had both gone east, and then he clarified at trial that one went southeast and one went northeast. And I just do want to mention that flight is not an element of this offense. So even if he did flee, and even if he did flee in the direction of A.J., that's not enough. The state needs to prove that Bobby shared A.J.'s criminal intent, or that there was a common criminal design between them. Because they did not do so here, they only showed that Bobby was merely present at the scene, and that's not enough for accountability. But afterwards, when he was interviewed by the police, and they asked him where the gun was, he was able to explain some things about the gun, so he must have met with the shooter afterwards. So if you look really closely at the statements that Bobby did make about the gun, he didn't give a definite statement as to what had happened. He stated all within one or two sentences that he thought A.J. got rid of the gun, sold it, that the police got it, or something. He also was... But how would he know that if he didn't talk to the shooter? It appears from the statement that he was just speculating, but again, even if he did associate with A.J. after the offense was committed, that's not enough. The state needs to prove that Bobby actually aided or abetted A.J.'s commission of the crime, or at least planned the crime, or attempted to aid or abet A.J. There's not evidence of that here, and that's why Bobby was just... So isn't it evidence when there is some testimony that he left with the shooter that he had some knowledge about the gun, so he obviously met with the shooter afterwards? Isn't that all evidence? I mean, it may be circumstantial evidence, but... So all of these things can weigh in favor of an accountability finding, but the totality of the circumstances still does have to show that Bobby was accountable. And to be accountable, again, Bobby has to facilitate A.J.'s commission of the crime. And there's just no evidence of that here. An example of a case where they found that there was no accountability in the same type of situation was People v. Taylor, where the defendant was driving the principal offender around and drove him away after the offense, and the court held that that's still not enough. Even though that he drove him away, he was his getaway driver, escaping from the scene is not an element of the crime. It needs to be shown that Bobby shared A.J.'s criminal intent or that there was a common criminal design between them. So once A.J. and Bobby were both in the car, there's no showing that Bobby did anything to aid or abet A.J. The evidence only establishes that he was merely present in the car. He stated in his ERI that the reason he was present is because he wanted to get a ride to his aunt's house. The statement was corroborated by Bobby's cousin, who stated that she and her mom, Bobby's aunt, did live nearby to Morgan and also that she had seen Morgan and A.J. associating with each other. Not Morgan and A.J. Oh, excuse me. Morgan and Bobby associating with each other around the neighborhood. There's no other evidence showing that Bobby was not in the car for that reason. And there's no affirmative evidence, again, that Bobby did anything to facilitate A.J.'s commission of the crime. So even if you take all reasonable inferences in the light most favorable to state that he did flee, that he might have had some ideas on what happened to the murder weapon, this doesn't add up to accountability where you don't have evidence that he shared A.J.'s criminal intent or that there was a common criminal design between them. Without this, Bobby was merely present at the crime scene, and for that reason, his conviction should be reversed. If there are no other questions, I can move on to Argument 3. So as I was just discussing, this is a case that's entirely about accountability. During deliberations, the jury asked a question indicating that they did not understand mere presence and, in turn, did not understand the standard to convict Bobby under an accountability theory. The question was this, the law regarding accountability, does that mean that a person is legally responsible for the actions of another person because they were present during the crime and there is a reasonable doubt as to why they were present during the crime? In other words, they're asking if they should convict Bobby if they believe he was present and they're not sure why he was present. Of course, this is incorrect. They can't convict Bobby unless they find beyond a reasonable doubt that Bobby was more than merely present at the scene. This is a specific question on a point of law, and the trial judge had a duty to answer it. A way that the judge could have answered the question was with their instruction that was requested by counsel. Counsel did request the mere presence instruction during the jury instructions conference. That wasn't an IPI instruction. That was a non-IPI instruction. That's correct. So at the time of the jury instructions conference, counsel requested this instruction and the court declined. Once this question was posed, counsel, again, requested this instruction. Has the instruction that was posed ever been found to be a correct instruction of the law? It's not. So in a lot of other cases, the court has been. It's parts of other. It's in other cases, for sure. So it's actually in the statute. Everything that is said in that instruction that was tended is based upon case law. Of course. So that instruction is entirely based on the accountability statute and based on the case law. If the court did not want to give that entire instruction, another alternative would be for the court to just give the accountability statute. The IPI instruction that the jury did receive on accountability does not include language on mere presence, even though that language appears in the statute. So if the jury had gotten the portion of the statute reading mere presence at the crime scene does not render a person accountable for the offense, they would have been able to fully understand the idea of accountability as required or as articulated in the statute. The jury didn't get any information on mere presence in its jury instructions from the instruction on accountability given. This issue is fully preserved, and the state can't prove that the court's refusal to answer this question was harmless. The jury's question, again, showed that they did not understand a point of law, not only a point of law but the central point of law in this case. The jury by law is entitled to an answer to this question, and without an answer, Bobby was deprived of a fair trial. If there's time, I'd like to briefly discuss Argument 2. Again, Bobby Wilson, who is a special education student with an IEP and an IQ recorded as low as 62, was deprived of a fair trial when his ERI statements were admitted, even though he did not validly waive his Miranda warnings. At the suppression hearing, the jury- Wasn't that a question of fact, Counsel? Well, the other problem besides the fact that he did not- our position is that he did not waive his Miranda warnings, and that position is supported by Dr. Antoinette Kavanaugh. But you have a dueling expert opinion. We do have dueling expert opinions. The problem, however, is that instead of listening to either of the expert opinions, the trial judge erred by disregarding both opinions and relying on his own lay opinion to determine that Bobby cannot understand Miranda. Well, he didn't rely on his own opinion. He watched the videotape of the interrogation. Isn't that correct? He did watch the videotape, and he stated that what's really dispositive in this case is his own viewing of the videotape. In People v. Daniels, which is a case very similar to this one, the same kind of thing happened. The judge ignored the expert opinions, stating that he could see from the video that it clearly shows that the defendant could understand Miranda. The court in that case held- Counsel, would your argument change if he was basing it not on the videotape but on the defendant's own testimony, if the defendant had testified at this suppression hearing? Would that change your analysis of this issue? If he had testified at the suppression hearing? Rather than just watching the video and making an analysis of what he believed that the video showed. Well, under People v. Daniels, the rule is that the judge is not entitled to reject the expert opinions for no sound reason. So if the judge in this case still decided, I watched the ERI and I watched Bobby's testimony and I'm going to only listen to this and ignore the experts, it's improper. He can't reject the expert's opinion again for no sound reason. Also, in People v. Daniels, which is very important here, the court held that a judge's personal assessment of an ERI provides little, if any, insight into whether an individual can understand Miranda. So the same thing that happened in Daniels is true here. The judge rejected both experts with no sound reason and his personal assessment provides little, if any, insight into whether Bobby actually was able to understand Miranda. Just quickly, I want to point out that of the two experts, Dr. Cavanaugh, who came to the conclusion that Bobby was unable to understand Miranda, did a lot more testing of Bobby, spent time interviewing not only Bobby but his mom and a paraprofessional, which is Bobby's personal aide, provided to him by CPS to follow him throughout his entire day to help him manage his course load, and through all of that, she determined he couldn't understand Miranda. Dr. Messina, on the other hand, didn't perform any independent testing of Bobby. She administered what was called a malingering test to determine if Bobby purposely performed poorly on the other tests. Bobby actually passed this test, meaning that the results of this test showed that he was not malingering. Nevertheless, she decided that his effort level was still low and decided not to test him whatsoever. So because Cavanaugh's opinion was more thorough and based on more evidence, and because the court erred by relying on its own opinion instead of that of the experts, we're asking that you reverse and remand or at least order a new suppression hearing. Finally, we would ask that Bobby's conviction be reversed outright under Argument 1, reversed and remanded under either Arguments 2 or 3, or that a new sentencing hearing is ordered under Arguments 4 and 5. Thank you. Thank you very much. Good morning again, Your Honor. With respect to the reasonable doubt issue, the jury properly found defendant guilty of murder based on accountability. In doing so, they properly rejected defendant's theory of mere presence because the evidence showed that defendant and A.J. were working in concert together that night and that defendant... How does it show they were working in concert from the beginning to the end? Just lay the facts out for me that shows... I mean, specifically... Oh, specifically. I'm sorry. I've only listened to the tape. I haven't read the transcript, which I am going to read, but it seemed like after his initial denial, he puts himself in the car before A.J. ever walks up. Well, before getting to the car, there was before the murder itself, and the circumstances and, again, the evidence at this juncture must be viewed in the light most favorable to the prosecution. It showed that defendant and A.J. were best friends, that they had spoken together earlier that day. They were both outside the barbershop that night, that the defendant had looked through the barbershop, saw the victim, and as he admitted in his statement, this victim was known to wear expensive jewelry that everyone coveted. Defendant was waiting outside the barbershop. He approached the victim as the victim was about to get into his car and got into the car with the victim, and immediately thereafter, his best friend, A.J., also gets into the car. And this allowed for a reasonable inference that defendant and A.J. were working together and that he facilitated waiting outside for the victim in the barbershop to the car to get the victim into. But there's no indication in his statement that that was what was transcribed. Is that correct? He doesn't mention that the common design or that he was part of it. We're just kind of filling in the gaps here. Well, intent can be inferred from the acts and circumstances. Words of agreement that he and I agreed to do this doesn't need to be. . . So what were those? I'm sorry? We don't have any of those, right? No. We have no words of agreement. We have no plan, no indication from the defendant's statement or from the co-defendant or from any of the witnesses surrounding it that there was any kind of agreement. Is that correct? Well, there's no explicit words of agreement, but the circumstances and the actions. . . In standing outside the barbershop is the circumstances. . . Well, but that doesn't stand alone. There's more, and the jury viewed all the evidence. And so after the . . . Let's talk about one piece of evidence. Wasn't there evidence that the defendant said that he was in the barbershop to get a haircut? Yes, in one of his statements. And there was evidence that he said he wasn't in the barbershop at all. Right, and that was one of the factors. . . Is that an important piece of evidence to show that maybe he didn't hitchhike a ride? It was extremely important, and it was also presented to the jury and considered and showed a consciousness of guilt. And going to the statement that he made after the murder, after he fled the scene in the same direction as his best friend, A.J., it showed that he initially lied to the police. He gave many stories. He'd get, I was in the barbershop. I walked in. I walked out. A.J. was in the barbershop. He walked out before me. I spoke to the victim. I waited outside. I asked for a ride. But those things, he finally fessed up, that's not what happened. He then finally said, no, I was waiting outside. I didn't have bus fare. And so when the victim, who my auntie knew, I went up to him and asked him for a ride. But that was negated by defendant's own admission in his statement regarding where he was positioned in the car when he got in, where there was indication that he was sitting in the back. He had asked for a ride, and he was sitting in the back. And A.J., as soon as he got in, was right there, got in the car, in the front. And so, again, his lies to the police, his initial denials, his I don't know anything, yes, was a critical factor that went into showing his consciousness of guilt as well as the circumstance that showed that he was part and parcel with A.J., his best friend. And then it also shows what happened during, while the murder was occurring in the car. And it was his actions of he remained in the car while A.J. got in, pointed the gun at the victim. He stayed there while the struggle took place and the jewelry and the gun, over the gun. He remained in the car after the first shot. And as Buckner testified, the second shot came about one to two minutes. He still stayed in the car. And then he only got out afterwards. And this continued presence while the entire offense was going on allowed for the reasonable conclusion that he was involved. But it gets better because after the murder and after getting outside of the car, he doesn't stick around to talk to the police and say, I was just there, I saw this, let me tell you what happened. Instead, he ran in the same direction as his best friend. And he did not report it to the police. And then, as we just discussed, when he did talk to the police, he lied. And then he finally admitted, I was in the car, but you know, A.J. is the one who did it. And then he did give statements regarding having knowledge of what A.J. did with the gun. And this was indicative of a continued association. And under the accountability case law, the factors that should be considered and can be considered, while mere presence is not enough, it can be considered with his presence during the crime, his flight from the scene, his failure to report the crime, and his continued association. And in this case, all of that evidence was presented to the jury, and the jury rightfully rejected the defense theory that was presented of mere presence. Based on that and based on the evidence that was presented to the jury, he was properly found guilty, and this Court should affirm that conviction. Let's talk about the instruction. Yes. The jury clearly was confused about the accountability. They wouldn't ask that question unless there was some confusion. Do you agree? There was. Well, they gave a jury. They had a jury note that was sent out, and they had a question regarding mere presence. They had a question regarding a pretty black letter explanation of the law of accountability. And the IPI committee has clearly stated that IPI 5.03 should cover the accountability principles as well as the mere presence concept that the jury was inquiring about, and that in this case there was no abuse of discretion by the trial court in refusing to give this non-IPI because the 5.03, which does cover mere presence, was given, and an abuse of discretion by the trial court occurs when there is no reasonable entity that would take the same view. And, in fact, this Court on four, at least four cases that I've cited in my brief, not all Thomas, Wilson, and Tombatis, has held that the non-IPI on mere presence is not necessary when 5.03 is given. Now, yes, there was a jury note, but that still did not provide the giving of a non-IPI. Well, shouldn't the trial judge have answered that jury note? And the trial judge – The jury's confused. Isn't it the job of the judge to be able to explain to them? Well, and the judge did respond to the jury and did tell them – How did he respond? Just read your instructions. Is that what he said? Yes, he asked – Read your instructions. You don't understand. Well, he asked them to review the instructions that they have been given the legal principles of specifically what they asked for, the non – the presence concept, and that the trial court correctly, you know, again, gave the IPI 5.03, which the courts have said cover mere presence. And in this case, there was no abuse of discretion. And the – there was no abuse of discretion with respect to the response by the trial court, especially in view of that there was no abuse of discretion in not giving the non-IPI in the first – Well, the jury is confused, and the judge knows the jury is confused. Does the judge not have a duty to do something affirmative other than, say, read the instructions? This was the main tenet of the defense, was it not? The defendant's whole defense was mere presence, and the question was regarding mere presence. So how is it not incumbent on the judge to clarify that confusion? Well, again, the – what the jury – what the defense wanted was not in keeping with the principles of mere presence, where the non-IPI was not in keeping with accountability principles, where it asked the jury to mere presence, that flight from the scene doesn't matter, and that – and I'm sorry, I'm just reviewing. I mean, and that the defendant does not oppose the commission of the crime. Well, those were all factors that the jury could consider. The non-IPI that the defense wanted specifically wanted to indoctrinate the jury in their theory of defense, that none of these factors matter and that should be considered. Well, let's separate out the non-IPI and just go to the judge's response. Do you think that judge's response clarified any of the confusion that the jury had? I believe it did because it did direct the jury to go back to review the instructions more closely and that their question and query regarding mere presence was within the instructions and for them to review it one more time. So we should write that when a jury is confused, the child court has no duty to unconfuse the jury or do anything to clarify. They just have to just say, read the instructions. Is that what we should write? Well, again, if the one also has to look at the fact that when the jury was given that response, they did not come back and say, judge, we've tried and we still don't understand. Now, this was an appropriate response based on the fact that the IPI 503 has been found to hold all the accountability principles based on the IPI committee's notes and that the non-IPI has not been supported as should be given because, again, mere presence. You seem to be arguing that there's one of two choices that the trial judge had was just say, go look at the instructions that we already gave you or I'm going to give you this non-IPI instruction. It's not a binary choice. There are a myriad of options that the judge had and he didn't do any of those. Well, he had the options that he did have was the one of the options that he did actually exercise and the one that he did have was that please review the instructions that you have been given the legal principles. And that was an option available. Yes, could he have given, on another hand, the non-IPI? Or could he have given a hybrid of that? Yes, he could have given that. But the issue is did the trial court abuse its discretion in opting to ask the jury to review the instructions that they had before it? And I submit to this court that it was not an abuse of discretion, that it was consistent with the fact that they had been given that IPI 5.03 and the court correctly asked the jury to review that instruction and see if it addressed their concerns. Counsel, can you read the question for me again? I'm unable to find it here. The jury question. The jury's question. Yes. I quote, the law regarding accountability. Does that mean that a person is legally responsible for the actions of another person because they were present during the crime and there is a reasonable doubt as to why they were present during the crime? That's, sorry, that's what I thought. All right. That sounds like they are totally and completely confused when they're asking, can somebody be held accountable for merely being present during the crime when there is a reasonable doubt? They're saying there's a reasonable doubt as to why he is present. So the judge, looking at this instruction that the defense tendered, seems like it goes directly to the heart of the question that they asked. The defense tendered instruction that says the defendant's mere presence at the scene of the crime charge is not sufficient to prove accountability. That answers part of their question. Even where the defendant does not oppose the commission of the crime, that surely would go to the reasonable doubt as to why he's there. Knows the crime is being committed and flees from the scene. This instruction seems to answer the question posed. I don't understand why the judge would not have answered that question. I just, it boggles my mind. Well, just in looking at the non-IPI that you just read, I mean, with respect to the last parameter, which is flees from the scene, well, we all know that flight from the scene is indicative of a consciousness of guilt. And so that's contrary for this jury instruction to tell the jury that they don't need to consider that, that that does not indicate one way or the other. But in this case, it's saying it doesn't indicate guilt, which is totally contrary to well-established legal precedence. This, along with the initial instruction. But again, if we're looking at why the trial court reviewed, and the trial court, again, had the opportunity to review this, and the standard of review for this court is whether it abused its discretion, and the people's position is that it did not abuse its discretion. Thank you, Your Honor. I'm sorry. And with respect to issue number two, you know, the court You've already used up your time. With respect to all the other issues, I would rely on our brief and ask that all of our arguments be considered, and that the defendant's conviction and his sentence be affirmed. Thank you very much. Thank you, Your Honor. I just have a couple of points. I just want to point out that on issue one, simply disbelieving Bobby's story doesn't prove that he was involved. Again, there needs to be affirmative evidence of Bobby's shared criminal intent. I mean, you've already given those. This is rebuttal. Do you have something to add in rebuttal that you haven't told us about? I do. So I just wanted to talk about if even taking all reasonable inferences in the light most favorable to the State. So the State talked about A.J. and Bobby being best friends. Briefly, I want to point out that Bobby did say that they used to be best friends. They weren't friends anymore. That was corroborated by his mom. The State also pointed out that Bobby may have known the motive for the crime, which was to take Morgan's jewelry. Of course, he would have known that whether he was in the car, merely present in the car, or whether he was involved. He did state in his ERI that he had heard A.J. say, could you take off your watch? So anyone would know that he was at the scene, present at the scene. Again, even if you want to take all these inferences in the light most favorable to the State, that they were friends, that he knew the motive, that he knew what happened to the gun, that he fled from the scene, none of this is enough. This doesn't show that Bobby either facilitated the crime or planned it. All this shows is that Bobby was merely present at the scene. Mere presence is not enough to prove accountability, and for that reason we're asking that you reverse this conviction. Thank you very much. I think you guys gave us a very interesting case, and you did a very good job, and we'll have an order and opinion for you shortly. The court is now adjourned.